**WHITE CONSOLIDATED INDUSTRIES, INC.,**
Plaintiff–Appellant,

v.

**WESTINGHOUSE ELECTRIC CORPORATION, Defendant–Appellee.**

No. 98–3524.

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1999.

Decided May 27, 1999.

Richard Gurbst (argued), Dale E. Stephenson (briefed), Douglas A. McWilliams (briefed), Squire, Sanders & Dempsey, Cleveland, OH, James P. Murphy, Squire, Sanders & Dempsey, Washington, DC, for Plaintiff–Appellant.

John D. Luken (argued and briefed), John W. Beatty (briefed), Kevin P. Braig (briefed), Dinsmore & Shohl, Cincinnati, OH, for Defendant–Appellee.

Before: BOGGS, CLAY, and GODBOLD,* Circuit Judges.

CLAY, Circuit Judge.

Plaintiff–Appellant, White Consolidated Industries, Inc. ("WCI"), appeals from the order entered by the district court granting summary judgment in favor of Defendant–Appellee, Westinghouse Electric Corporation ("Westinghouse"), and denying WCI's cross-motion for partial summary judgment, in this action for indemnity and contribution for remediation costs incurred in relation to the cleanup of a contaminated site in Edison, New Jersey. WCI brought suit against Westinghouse for indemnity under an Agreement of Purchase and Sale ("Purchase Agreement"), and contribution under the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9607–9675 (1994), the New Jersey Spill Compensation and Control Act of 1977, N.J. Stat. Ann. § 58:10–23 (1993), and pendent state common law claims. WCI alleges that the district court erred when it determined (i) that WCI impliedly assumed future arising environmental liabilities, including CERCLA liability, under

---

* The Honorable John C. Godbold, Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

the Purchase Agreement; (ii) that Westinghouse did not breach a warranty in the Purchase Agreement, as Westinghouse did not know about any contamination or liability; (iii) that WCI cannot prevail against Westinghouse for fraudulent concealment because Westinghouse was not aware of any "defect" at the time of contracting; and (iv) that summary judgment was appropriate with respect to WCI's claims of misrepresentation, public nuisance, and strict liability for abnormally dangerous activities, although discovery had not been conducted on these issues. For the reasons set forth below, we AFFIRM the decision of the district court.

## I.

The facts of this case are undisputed. Westinghouse, a corporation duly organized under the laws of Pennsylvania, owned and operated a facility in Edison, New Jersey ("Edison facility") from at least 1951 through 1974. Westinghouse manufactured radios and televisions at the Edison facility until 1969 or 1970, when Westinghouse converted the facility for the manufacture of dehumidifiers and air conditioners. While manufacturing dehumidifiers and air conditioners, Westinghouse used trichloroethylene ("TCE"), a hazardous solvent, as a degreaser and/or cleaning agent. In 1970, TCE spilled from a ruptured 2000–gallon tank, and forced the evacuation of at least a portion of the Edison facility. Westinghouse dealt with the spill by closing off the affected areas, opening windows, and running fans, thus allowing the material to evaporate. By the next day, no contamination was observable.

WCI, a Delaware corporation with its principal office in Cleveland, Ohio, purchased Westinghouse's major appliance manufacturing business, including the Edison facility, in 1975. The terms of the sale were set forth in the Purchase Agreement, dated December 31, 1974, and amended January 10 and February 28, 1975. In the Purchase Agreement, Westinghouse repre-

sented that "to the best of [its] knowledge and belief," there were no "existing facts or conditions which might give rise to any claim, litigation, proceeding or investigation" and that "none of the operations conducted on the Real Properties ... presently violate any applicable [ ] anti-pollution ... requirement (under interpretations currently in effect)." (J.A. at 131, 132). Westinghouse agreed to indemnify WCI for "any and all damages and liabilities whatsoever resulting from any misrepresentation of Westinghouse." (J.A. at 154). However, Westinghouse did not disclose to WCI the fact that there occurred a spill of TCE at the Edison Facility in 1970.

Approximately fifteen years after WCI purchased Westinghouse's business, WCI discovered evidence of TCE contamination at the Edison facility. WCI submitted these results to the New Jersey Department of Environmental Protection ("NJDEP") on October 10, 1991, and later entered into a Memorandum of Agreement with the NJDEP, wherein WCI agreed to implement a remedial action work plan to clean up the contaminated soil and groundwater at the Edison facility. WCI determined, through witnesses and environmental studies, that the likely source of the TCE contamination was the 1970 TCE spill that occurred when Westinghouse owned and operated the Edison facility. Consequently, WCI sent Westinghouse a letter, dated March 17, 1993, advising and demanding that Westinghouse assume liability and contribute response costs for the environmental contamination that resulted from the spill. Although Westinghouse acknowledged the occurrence of the TCE spill, Westinghouse denied that it was liable for remediation costs of the contaminated site.

WCI filed suit against Westinghouse in federal court on October 4, 1993, seeking recovery of response costs incurred in regards to the environmental cleanup at the Edison site. WCI sought declaratory, injunctive, and compensatory relief pursuant to (i) CERCLA, 42 U.S.C. §§ 9607–9675

(1994);[1] (ii) the Spill Act, N.J. Stat. Ann. § 58:10–23.11 (1993);[2] (iii) breach of contract; (iv) misrepresentation; (v) negligence; (vi) public nuisance; and (vii) strict liability for abnormally dangerous activity. Westinghouse answered the complaint and filed a counterclaim for contribution against WCI.

On September 22, 1994, WCI filed a motion for partial summary judgment based on CERCLA, the Spill Act, and breach of contract. In response, Westinghouse moved for summary judgment in its favor on all of WCI's claims the following day. On March 19, 1998, the district court granted summary judgment to Westinghouse on WCI's claims and denied WCI's motion for partial summary judgment. The district court determined, in relevant part, that Westinghouse could not have known in 1975 that the TCE spill that occurred when it owned the Edison facility could give rise to liability for environmental remediation because the laws that created such potential liability, namely CERCLA and the Spill Act, did not exist at the time and were not enacted until years later. The district court further concluded that Westinghouse was entitled to rely on the unambiguous language in the assumption of liability provision, which states that WCI assumes responsibility for future liabilities. As for WCI's breach of contract and fraudulent concealment claims, the district court determined that Westinghouse did not breach a warranty in the agreement, or fraudulently conceal a "defect," because Westinghouse did not know about any contamination or existing environmental liabilities. WCI filed a timely notice of appeal to this Court on April 17, 1998.

## II.

This Court reviews de novo a district court's grant of summary judgment. *See*

*EEOC v. Prevo's Family Mkt.*, 135 F.3d 1089, 1093 (6th Cir.1998). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Put differently, this Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir.1993) (quoting *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The evidence, all facts, and any reasonable inferences from the facts must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## III.

On appeal, WCI challenges the district court's determination that the assumption and indemnification clauses in the Purchase Agreement place the liability for the cleanup of the Edison Facility on WCI. WCI does not contest the district court's grant of summary judgment on its claims under CERCLA, the Spill Act, or negligence, and thus has waived its right to appellate review of these claims. *See Bickel v. Korean Air Lines Co.*, 96 F.3d 151, 153 (6th Cir.1996) (recognizing that arguments not briefed on appeal are

---

1. CERCLA makes liable, among others, "any person who at the time of disposal of any hazardous substances owned or operated any facility at which hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2) (1994).

2. "The New Jersey Spill Act is the state's analog to CERCLA....[T]he law under the Spill Act has developed along parallel lines to that of CERCLA." *Stearns & Foster Bedding Co. v. Franklin Holding Corp.*, 947 F.Supp. 790, 810 (D.N.J.1996).

waived). Hence, the primary legal question confronting this Court is whether the terms of the Purchase Agreement address the allocation of future environmental liabilities associated with the Edison facility, and if so, whether WCI expressly or impliedly assumed responsibility for future remediation costs.

### A. Breach of Contract

■ In its first assignment of error, WCI asserts that Westinghouse's failure to disclose that there was a TCE spill at the Edison facility constitutes a material breach of the Purchase Agreement, thereby obligating Westinghouse to indemnify WCI for the environmental cleanup. WCI contends that Westinghouse breached § 9.2.1 of the Purchase Agreement because Westinghouse had knowledge of the 1970 spill and knew of the hazards associated with TCE, yet misrepresented to WCI at the time of purchase that there was not a fact or condition that might give rise to a future claim that would adversely affect the business. WCI maintains that Westinghouse knew that the TCE spill created liability at the time of closing, as evidenced by a plethora of state and local laws regulating TCE at the time of the spill, and therefore is liable for remediation costs incurred at the Edison facility.

Westinghouse agreed in § 9.2.1 to "indemnify and save WCI harmless from . . . any misrepresentation of Westinghouse contained herein or in any agreement . . . from any breach of warranty or covenant or obligation of Westinghouse." (J.A. at 154). The relevant warranties given by Westinghouse stated:

4.1.5 *Litigation and Related Matters.*

(a) Except as identified and described in Part I of the Schedule, there is not any claim, litigation, proceeding or governmental investigation pending, or, to the best of its knowledge and belief, threatened against Westinghouse, nor to the best of Westinghouse's knowledge and belief are there any existing facts or conditions which might give rise to any

claim, litigation, proceeding or investigation, which might adversely affect the Business or the assets of the Business or the transactions contemplated by this Agreement or by the Other Agreements.

4.1.6 *Properties.*

(e) Except as otherwise described in part G of the Schedule, to the best of the knowledge of Westinghouse, none of the operations conducted on the Real Properties of the Leaseholds presently violate any applicable zoning, anti-pollution or other governmental requirement (under interpretations currently in effect) relating to particular Real Property or Leasehold or to such operations (and such operations are not dependent on so-called non-conforming use exceptions).

(J.A. at 131, 132).

Upon review of WCI's breach of contract claim, we find that Westinghouse did not breach any warranties it gave WCI, as the environmental liability relating to such a spill did not exist on the date of sale. Indeed, Westinghouse could not have known in 1975 that a prior spill of TCE could give rise to environmental remediation because the laws that created such potential liability, namely CERCLA and the Spill Act, did not exist at the time. WCI's citation of four anti-pollution state and township statutes in effect at the time of the Purchase Agreement, as well as the common law doctrine of nuisance, is unavailing, as none of the cited statutes indicate that TCE is a regulated substance, or that a spill of TCE could constitute a violation of any such statutes.

■ We similarly reject WCI's claim that § 9.2.1 of the Purchase Agreement imposes a "constructive knowledge" standard upon Westinghouse, in that Westinghouse should have known that the TCE spill was a fact or condition that would give rise to liability at the time of contracting, as WCI's claim ignores the clear and unambiguous language of the Purchase Agreement. *See Shifrin v. Forest City*

*Enters., Inc.,* 64 Ohio St.3d 635, 597 N.E.2d 499, 501 (1992) (citing *Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 374 N.E.2d 146, 150 (1978)) (stating that "[w]hen the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties"). Here, the language that Westinghouse represents "to the best of [its] knowledge and belief [there are no] existing facts or conditions which might give rise to any claim, litigation, [etc.]," requires more than a mere showing that Westinghouse should have known by virtue of the spill alone that liability might result from the spill. (J.A. at 131). Absent proof that Westinghouse knew of any contamination or knew that the spill itself could give rise to any existing environmental liabilities that might harm the business, Westinghouse did not breach the Purchase Agreement. WCI has not presented evidence that Westinghouse had any knowledge of the soil and groundwater contamination at the Edison facility, or proof that the TCE spill violated anti-pollution requirements that were in effect at the time of the spill. Therefore, WCI has not made the requisite showing.

## B. Assumption of Liabilities

■ Alternatively, WCI claims that the district court erroneously determined that the assumption of liabilities provision in the Purchase Agreement is sufficiently broad to transfer to WCI all environmental liability. WCI asserts, contrary to the district court's conclusion, that the one-year grace period for which the parties contracted does not indicate that WCI and Westinghouse foresaw that liabilities arising after the grace period would remain with WCI. We disagree. The district court did not commit reversible error in concluding that WCI assumed liability for subsequently arising environmental liabilities.

The Purchase Agreement's assumption and liabilities provision, which addresses the allocation of potential future liabilities associated with the business, provides in pertinent part:

> 9.1 Assumption of Liabilities: Subject to Section 9.2 hereof, WCI hereby assumes, effective as of the Closing, the following liabilities and obligations of Westinghouse . . .
>
> 9.1.5 All obligations and liabilities of the Business, contingent, or otherwise, which are not disclosed or known to Westinghouse on the Closing Date and are not discovered by WCI within a period of one year from the Closing Date.

(J.A. at 153, 154).

■ Generally, parties may contract to shift CERCLA and other environmental liabilities by means of an assumption or indemnification agreement. *See Olin Corp. v. Yeargin, Inc.,* 146 F.3d 398, 407 (6th Cir.1998) (citations omitted). This Court has recognized that a provision in an assumption agreement, "which contains broad language sufficient to indicate that the parties intended to include all liabilities, will include environmental liabilities as well even without specific reference to an environmental statute such as CERCLA." *Id.* A broad assumption of liabilities provision therefore transfers CERCLA liability to the purchaser of a business who agrees to the broad assumption. *See id.* We apply state law to determine whether a particular contract provision allocates responsibility for subsequently arising environmental liabilities. *See id.* (citing *SmithKline Beecham Corp. v. Rohm & Haas Co.,* 89 F.3d 154, 157 (3rd Cir.1996)).

■ While Ohio law dictates that anticipatory releases are neither unusual nor per se void as a matter of public policy, *American Druggists' Ins. Co. v. Equifax, Inc.,* 505 F.Supp. 66, 68 (S.D.Ohio 1980), Ohio courts have not addressed whether a pre-CERCLA assumption agreement can transfer CERCLA liability to the purchas-

er of a business.[3] However, other courts confronted with the issue have determined that an agreement entered into prior to the passage of CERCLA can allocate CERCLA liabilities. For example, in *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10 (2d Cir.1993), the Second Circuit determined that a purchaser who agreed to "assume and ... indemnify [the seller] against all liabilities, obligations and indebtedness of [seller] related to the Aluminum Assets ... as they exist on the Closing Date or arise thereafter with respect to actions or failures to act occurring prior to the Closing Date" did in fact assume responsibility for all future arising environmental liabilities. *Id.* at 12. Moreover, the Third Circuit in *Rohm & Haas,* relying upon the Second Circuit's decision in *Consolidated Aluminum,* determined that an indemnity provision which provided that the purchaser assume "all losses, liabilities and deficiencies" manifested the parties' intent to allocate all present and future environmental liabilities to the purchaser. *Rohm & Haas,* 89 F.3d at 159–60. Similarly, the Third Circuit has concluded that where the purchaser of a business agreed to "assume all of the liabilities and obligations ... of whatsoever nature," the contract language was sufficiently broad to encompass CERCLA liability, thereby allocating to the purchaser the responsibility for the cleanup of the contaminated site. *See ALCOA v. Beazer East, Inc.*, 124 F.3d 551, 556 (3rd Cir.1997). Hence, when determining whether a pre-CERCLA assumption provision transfers responsibility for response costs to a purchaser, courts have found that the provision covers response costs if it is either specific enough to include CERCLA liability or general enough to include any and all environmental liability. *See Rohm & Haas,* 89 F.3d at 159; *Consolidated Aluminum,* 5 F.3d at 15–16.

WCI's argument that the assumption language in the Purchase Agreement did not transfer the environmental cleanup liability at the Edison facility to WCI is unpersuasive. By contract, WCI assumed "[a]ll obligations and liabilities of the Business, contingent, or otherwise, which are not disclosed or known to Westinghouse on the Closing Date and are not discovered by WCI within a period of one year from the Closing Date." (J.A. at 154). By assuming "[a]ll obligations and liabilities of the Business, contingent, or otherwise," WCI agreed to assume all potential unknown liabilities related to the business. (J.A. at 154). Thus, absent proof that Westinghouse had knowledge of the contamination or existing environmental liabilities, WCI is solely responsible for future liabilities that arise after the one-year grace period. In accordance with the district court's decision, we find that the Purchase Agreement allocated to WCI the risk of CERCLA losses after the expiration of the one-year indemnification period. *See Keywell Corp. v. Weinstein,* 33 F.3d 159, 165–66 (2nd Cir.1994) (discussing liabilities under CERCLA after the expiration of a two-year grace period).

■ Finally, WCI claims that the district court's conclusion contradicts tenets of contract interpretation since indemnification agreements must be strictly construed against the indemnitee, particularly where the indemnitee's mistakes cause the underlying liability. We disagree, as we must rely upon the unambiguous language in the Purchase Agreement which indicates that WCI agreed to assume these unknown environmental liabilities when it purchased Westinghouse's business operations. Moreover, where, as here, the Purchase Agreement was entered into by sophisticated companies after arduous negotiations, we will give effect to the parties' freely negotiated terms. *See City of Toledo v. Beazer East, Inc.*, 103 F.3d 128, 1996 WL 683505, at *1

---

**3.** The choice of law provision in the Purchase Agreement provides that the Purchase Agreement is to be governed by Ohio law.

n. 5 (6th Cir.1996) (unpublished table decision) (citing *Glaspell v. Ohio Edison Co.,* 29 Ohio St.3d 44, 505 N.E.2d 264, 265, 266 (1987)) (stating that the "general rule that clauses limiting liability of drafter are to be strictly construed need not apply when parties are sophisticated entities"); *Consolidated Aluminum,* 5 F.3d at 16 (noting that the court is not willing to ignore the broad inclusive language of agreements freely entered into by two sophisticated parties).

### C. Fraudulent Concealment

■■■■ As for WCI's fraudulent concealment claim, WCI argues that there are genuine issues of material fact as to the existence of a "defect" and the "materiality" of the TCE spill that preclude the grant of summary judgment to Westinghouse. To prove fraudulent concealment in a real estate transaction, a purchaser must show detrimental reliance upon a material fact or defect not readily observable to the purchaser, which was deliberately concealed by the seller. *See Black v. Cosentino,* 117 Ohio App.3d 40, 689 N.E.2d 1001, 1002 (1996); *Weintraub v. Krobatsch,* 64 N.J. 445, 317 A.2d 68, 74 (1974). Contrary to WCI's contention, we find that for nondisclosure to be deliberate, the seller clearly must have knowledge of the defect, that is, liability or contamination in this case. As stated previously, however, Westinghouse had no knowledge at the time of contracting that the Edison facility was contaminated as a result of the TCE spill, or that the TCE spill would subject the business to liability. Accordingly, the district court's conclusions are not erroneous.

### IV.

■■■ The final issue presented for review is whether the district court prematurely granted summary judgment to Westinghouse on WCI's claims of misrepresentation, public nuisance, and strict liability for abnormally dangerous activity, without affording WCI opportunity to conduct necessary discovery. WCI claims that the district court's Case Management Order expressly limited discovery to the primary liability issues, namely CERCLA, the Spill Act, and breach of contract, and expressly stayed discovery on its state common law claims until after resolution of the threshold liability issues.[4] While WCI raises a colorable claim, we nonetheless decline review of this issue, as WCI's claim is raised for the first time on appeal and is not preserved for appellate review. *See Plott v. General Motors Corp.,* 71 F.3d 1190, 1195 (6th Cir.1995) (stating that this Court generally will not review a post-judgment claim asserting a need for discovery where the non-movant failed to advance such claim before the district court); *see also Vance ex rel. v. United States,* 90 F.3d 1145, 1149 (6th Cir.1996) (recognizing that while "summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery," it is the non-movant's responsibility to inform the district court of the need for discovery, by filing an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure or filing a motion requesting additional discovery).

WCI's failure to file a Rule 56(f) affidavit or motion for discovery in the district

---

4. The Case Management Order, entered on September 1, 1994, provides, in pertinent part:

1. All discovery related to issues of Westinghouse's alleged liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. 9601 *et seq.,* and the New Jersey Spill Act ("NJSA"), N.J. Stat. Ann. 58:10-23.11 *et seq.,* and all discovery related to issues of either party's alleged liability under the written Agreement, as defined in paragraph 20 of the Complaint, shall be completed by September 2, 1994. Notwithstanding the foregoing sentence, all other discovery, including discovery regarding allocation of liability under CERCLA and the NJSA, is hereby stayed pending the Court's ruling on the motion(s) for summary judgment filed pursuant to Paragraph 2 of this Stipulation and Order and stayed pending any settlement negotiations pursuant to Paragraph 7 of this Stipulation and Order. (J.A. at 100).

court, and failure to specify how additional time for discovery would have precluded the grant of summary judgment in favor of Westinghouse, is fatal to its claim for relief. *See Klepper v. First Am. Bank,* 916 F.2d 337, 343 (6th Cir.1990) (affirming grant of summary judgment despite insufficient discovery opportunity where nonmovant never filed Rule 56(f) affidavit). Although the court stayed discovery on the common law claims, we observe that Westinghouse's motion for summary judgment was filed after entry of the Case Management Order. Therefore, if WCI recognized that it could not oppose the motion for summary judgment without further discovery, then it should have notified the district court of its need for discovery. By opposing Westinghouse's motion for summary judgment by briefing the merits of the claims while not filing a Rule 56(f) affidavit or motion for discovery in the district court, WCI evidenced its belief that further discovery was unnecessary to address the claims at issue. We therefore find unpersuasive WCI's purported need for additional discovery now that the district court has granted summary judgment to Westinghouse, and in any event, this claim is not preserved for appellate review.

## V.

We conclude that WCI assumed responsibility for subsequently arising environmental liabilities pursuant to the broad assumption of liabilities provision in the Purchase Agreement, and Westinghouse's failure to disclose the TCE spill did not constitute a breach of contract or concealment of a material fact or defect. Further, we reject WCI's contention that it was denied sufficient time for discovery on its claims of misrepresentation, public nuisance, and strict liability for abnormally dangerous activity, as this issue was not properly preserved for appeal. We therefore AFFIRM the district court's decision.