*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0209P (6th Cir.)
File Name: 01a0209p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――――

OWENS CORNING,
   *Plaintiff-Appellee,*

  *v.*

NATIONAL UNION FIRE
INSURANCE CO. OF
PITTSBURGH, PENNSYLVANIA,
   *Defendant-Appellant.*

No. 99-4275

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 95-07700—David A. Katz, District Judge.

Argued: December 5, 2000

Decided and Filed: July 5, 2001

Before: BOGGS and GILMAN, Circuit Judges; and
BECKWITH, District Judge.[*]

―――――――――――

[*] The Honorable Sandra S. Beckwith, United States District Judge for Southern District of Ohio, sitting by designation.

1

———————————

**COUNSEL**

**ARGUED:**   H. Frederick Humbracht, Jr., BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, for Appellant.   Mitchell F. Dolin, COVINGTON & BURLING, Washington, D.C., for Appellee. **ON BRIEF:** H. Frederick Humbracht, Jr., BOULT, CUMMINGS, CONNERS & BERRY, Nashville, Tennessee, Thomas S. Shore, Jr., RENDIGS, FRY, KIELY & DENNIS, Cincinnati, Ohio, for Appellant.   Mitchell F. Dolin, COVINGTON & BURLING, Washington, D.C., Steven R. Smith, CONNELLY, SOUTAR & JACKSON, Toledo, Ohio, for Appellee.

———————————

**OPINION**

———————————

BOGGS, Circuit Judge.   In this diversity action seeking declaratory judgment, Owens Corning, a corporation organized under the laws of Delaware, seeks to recover on its insurance contract with National Union Insurance ("National Union"), which has denied payment to compensate Owens Corning for indemnifying its directors and officers, who paid a substantial amount to settle a 1991 shareholder class action. Ohio law governs the contract, although we look to the corporate law of Delaware for the standards governing indemnification. Following a decision by this court in Owens Corning's favor on one issue, the district court, on remand, found that the insurance contract did not obligate Owens Corning to allocate its settlement and defense costs between those attributable to the directors (covered) and to the corporation (not covered), and also found that indemnification was appropriate under governing Delaware law. National Union appeals the resolution of these two substantive issues. National Union also appeals two procedural decisions of the district court: its entry of final judgment in favor of Owens

However, it appears never to have objected at all, even to the insured – perhaps believing this lack of involvement might assist an attempt at complete disclaimer.

More importantly for our purposes, National Union has slept on this defense over the long course of this case. The insurer's new arguments appeared only after other defenses to payment had crumbled. Like the defenses National Union *did* raise earlier, based on the asbestos exclusion, settlement allocation, or unlawful indemnification, a defense based on unreasonableness of the underlying settlement would find its ground in the actual terms of the D & O policy, the sequence of events that occurred, and the governing law.   National Union gives no plausible reason why this defense was not briefed or adjudicated along with its other defenses. If issues remain in a case, a motion for entry of final judgment must satisfy the strictures of Rule 54(b), and the court made no such findings.   However, under the facts of this case, the reasonableness of the *Lavalle* settlement was not an "issue" in this declaratory judgment action and National Union's belated demands for proof of reasonableness did not make it one. At the very least, the posture in which this matter arose placed a burden on National Union to show that the reasonableness of the settlement was a genuine concern, sufficient to forestall the impending summary judgment for the plaintiff.   The district court was therefore proper in not considering this issue as a matter barring entry of final judgment.

**III**

For the foregoing reasons, we AFFIRM the district court on all grounds asserted by the appellant.

to be litigated between the parties. The motion therefore falls more closely within the ambit of Fed. R. Civ. P. 58, which normally operates as a matter of course if a case is indeed over. *See Stearns v. NCR Corp.*, 195 F.R.D. 652, 653 (D. Minn. 2000) (adjudicating request for "entry of final judgment . . . pursuant to Rule 58 . . . effectively seeking a determination by the Court that there are no further issues to be resolved in this case").

National Union resisted the motion for entry of final judgment. In doing so, it raised a new ground to defend against paying pursuant to the Policy, claiming that the *Lavalle* settlement was not shown to have been reasonable. It claimed, and reasserts on appeal, that reasonableness of both the settlement amount and defense costs are prerequisite to a claim on the Policy, although the specific contractual or legal foundation for this claim is not explicated.[9] In essence this appears to be largely an attempt at further amendment of the pleadings, under another name, as this issue had appeared in only the most cursory manner in the defendant's Answer or other pleadings.[10]

The district court addressed the reasonableness question on the merits. Assuming our standard of review on this question is for abuse of discretion, we find the court to have given a reasoned opinion with no clearly erroneous findings of fact. The court found that National Union had been aware of the *Lavalle* settlement, which was approved by Judge Carr in the United States District Court for the Northern District of Ohio, and never to have objected. National Union points out that as a non-party, it could not have stopped the settlement.

---

[9] Presumably, appellant would assert claims based on Policy ¶ 2(b) (defense costs) and ¶ 9 (settlement reasonableness).

[10] National Union, in its Answer, denied in a general manner Owens Corning's allegation that "National Union did not object to the settlement and has never disputed that the settlement was a reasonable and appropriate one." (Pl.'s Compl. ¶ 16)

Corning and its denial of National Union's motion to amend the pleadings to add new claims and defenses. For reasons that follow, we affirm.

## I

Appellant National Union issued a directors and officers ("D & O") insurance policy to Owens Corning for the policy period from March 8, 1991 through March 8, 1992. The second part of the policy, Coverage B ("the Policy"), which is the subject of this dispute, insured Owens Corning for expenses incurred when Owens Corning indemnified its directors and officers against certain liabilities. Subject to a $2.5 million deductible, Coverage B states:

> This policy shall reimburse the Company for Loss from any claim or claims which are first made against the Directors or Officers and reported to the Insurer during the Policy Period . . . for any alleged Wrongful Act in their respective capacities as Directors or Officers . . . but only when and to the extent that the Company has indemnified the Directors or Officers for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company . . . .

On October 25, 1991, Owens Corning and six of its directors and officers were named as defendants in a class-action lawsuit brought by several Owens Corning shareholders. The lawsuit, captioned *Gaetana Lavalle v. Owens Corning Fiberglass Corp.*, Case No. 3:91 CV 7640 (N.D. Ohio 1991) ("*Lavalle*"), was filed immediately after a transitory decrease in Owens Corning's stock price. The *Lavalle* complaint alleged that Owens Corning's 1988 to 1991 filings with the Securities and Exchange Commission ("SEC") had misrepresented the company's future financial exposure to asbestos claims, that the defendants had failed to disclose the danger that Owens Corning's products liability insurance coverage would eventually be exhausted, and that the defendants had misled investors concerning the impact

that asbestos claims would have on the company's future financial condition and prospects.[1]

Specifically, the alleged misrepresentations focused on certain notes to the financial statements included in the company's SEC filings. These notes detailed the company's reserves and charges to earnings on account of contingent asbestos liabilities. As disclosed by documents filed under seal with us, the company believed that the lawsuit posed a risk of substantial damages. Upon being sued by the *Lavalle* plaintiffs, Owens Corning filed a claim under the Policy against National Union, and began to defend the suit. National Union denied coverage for the *Lavalle* claim based on two defenses: (1) an asbestos-claims exclusion in the policy, and (2) various potentially applicable exclusions (including ones pertaining to criminal or deliberate fraudulent acts and "short swing" profits).

Owens Corning settled the *Lavalle* class-action suit in 1995 for $9,975,000; National Union was kept fully apprised of the ongoing negotiations, but did not participate in the defense or settlement of the action. After indemnifying its directors and officers for their defense and settlement costs, Owens Corning requested reimbursement from National Union. National Union again denied coverage on the same grounds that it had earlier asserted. On December 1, 1995, Owens Corning filed this diversity action against National Union for breach of the

---

[1]Despite a long struggle against its asbestos liabilities, satellite litigation such as *Lavalle*, and other misfortunes, Owens Corning filed for bankruptcy while this action was pending before us. One alternative under National Union's contract reformation counterclaim would involve a charge against Owens Corning for higher premiums, although National Union does not focus on this aspect in its appeal before us. However, we have received a January 18, 2001 stipulation, signed by the parties and by the Hon. Mary F. Walrath, Bankruptcy Judge for the District of Delaware, which exempts National Union from any applicable provisions of the automatic stay. Our decision is therefore uninfluenced by the bankruptcy proceedings, whose intricacies we in any event would not need to concern ourselves with, for reasons that will become apparent.

already, in effect, present in its contractual defense. The second proposed amendment had even less value, primarily because the Sixth Circuit had already addressed the intent of the parties with regard to the contract. *See Owens Corning I*, 1998 WL 774109, at *6 ("Any intent to bar coverage of claims like *Lavalle* is not readily apparent . . . . To the contrary, National Union's interpretation requires lengthy semantic analysis . . . ."). The district court thus invoked the "mandate rule" to prevent trampling on this decision. National Union attempts to evade this by pointing out that the issue of reformation was not squarely decided by us, meaning the "mandate" was not mandatory. This is mildly disingenuous on its part, considering that it was the failure to brief the issue at the proper time that prevented a direct ruling. (Nat'l Union Br. at 31-32). Interpretation of a mandate is directed to a "court's common sense." *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997). *Owens Corning I* revolved around the interpretation of the asbestos exclusion provision, and the intent of the parties was an obvious, and stated, component of that interpretation, and we find no abuse of discretion in disallowing the amendment that would relitigate this matter.

### D. Entry of Final Judgment

After summary judgment on the indemnification and allocation issues had been entered, the district court held a status conference in May 1999 with the parties in order to identify remaining issues. The parties apparently disagreed about how to assess prejudgment interest and to what extent fees should be shifted from one side to the other. Briefs were requested and filed on these matters and, accompanying its brief, Owens Corning made a motion for final judgment. This motion does not indicate under what rule Owens Corning was proceeding (and the district court did not clarify the matter). Fed. R. Civ. P. 54(b) may be used by litigants for entry of final judgment on decided claims when not all claims in the case have been decided. Owens Corning's motion was, by contrast, based on the premise that there were no more issues

indemnification occurred in relation to a settlement under § 145(a),[8] in which good faith was required. But we further conclude that good faith was made subject to a presumption through the corporate by-laws, and that this presumption was allowable under the corporate flexibility we believe a Delaware court would find conferred by § 145(f). Given that this presumption of good faith stands unrebutted by the party ultimately made responsible, the indemnification proceeded "according to law," and was not made in breach of the Policy.

### C. Denial of Leave to Amend

National Union's motion for leave to file an amended answer and counterclaim was filed on January 20, 1999, almost exactly three years after its original answer. The motion asserted two new defenses. First, it claimed that, on the allocation issue, there had been a breach by Owens Corning of its duty of good faith and fair dealing. Second, it sought reformation of the contract to express the intent of the parties.

The district judge had several excellent reasons for denying this motion, for "justice [did not] require[]" these amendments. Fed. R. Civ. P. 15(a). Most obviously, Owens Corning was prejudiced by having these amendments suddenly appear when it was preparing to litigate the remaining issues by motion for summary judgment, and National Union failed to act with due diligence. *See Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968 (6th Cir. 1973). Furthermore, these amendments added little. *See Budd Co. v. Traveler's Indem. Co.*, 820 F.2d 787, 792 (6th Cir. 1987).

The first proposed amendment, on "good faith," since it is part of "all contracts" as the insurance company insists, was

---

[8] The district court cites to § 145(b), which relates to suits brought on behalf of the corporation or derivative actions. *Lavalle* was a third party action by shareholders for their own loss and thus falls under § 145(a).

Policy. Owens Corning sought a declaratory judgment that National Union was obligated to pay under the Policy all sums that Owens Corning incurred in the defense and settlement of the *Lavalle* lawsuit, less the $2.5 million deductible. Following discovery, Owens Corning filed a motion for partial summary judgment on the ground that EDO 192, the asbestos-claims exclusion, did not bar coverage for the *Lavalle* case. National Union contemporaneously moved for summary judgment on the same issue. On March 18, 1997, the district court denied Owens Corning's motion and granted summary judgment to National Union, reasoning that EDO 192 barred coverage for the *Lavalle* claim. However, in October 1998 we reversed the district court and entered partial summary judgment for Owens Corning, ruling that the exclusion did not extend to the claims arising from the *Lavalle* settlement. *Owens Corning v. Nat'l Union Fire Ins. Co.*, No. 97-3367, 1998 WL 774109 (6th Cir. Oct. 13, 1998) ("*Owens Corning I*").

On remand, the two remaining issues involved whether Owens Corning was obliged to have allocated some portion of the settlement to itself (a non-covered entity under the insurance contract) and whether the indemnification of its directors was conducted according to law, as the insurance contract requires. The district court granted summary judgment to Owens Corning on both issues.

Meanwhile, National Union had filed a motion to amend its answer to add a new defense based on a breach by its insured of the duty of good faith and fair dealing, and a new defense and counterclaim in which it sought to reform the contract to reflect the intent of the parties. National Union claimed that, although pursuant to *Owens Corning I*, the asbestos exclusion could not be read as applying to shareholder suits, the parties had intended that it would. The district court rejected these amendments as untimely and prejudicial, and as to the contract reformation, in violation of the mandate of *Owens Corning I*. Owens Corning moved to enter final judgment. However, National Union objected to entry of final judgment,

claiming that the original *Lavalle* settlement was unreasonable and that National Union should not be responsible for it. The court rejected this argument, and judgment was entered for Owens Corning for the cost of the settlement, substantial attorney's fees incurred during the settlement, and pre-judgment interest. National Union appeals the grants of summary judgment, the entry of final judgment, and the refusal to allow it to amend its pleadings.

## II

### Standard of Review

The allocation and indemnification issues come to us following grants of summary judgment in favor of Owens Corning. On appeal, we review the grant of summary judgment *de novo*, using the same Rule 56(c) standard as the district court. *Hansard v. Barrett*, 980 F.2d 1059 (6th Cir. 1992). The moving party has the initial burden of proving that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The burden then shifts to the nonmoving party to come forward with evidence showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In this case, we apply state law in accordance with the controlling decisions of the Ohio or Delaware Supreme Court, as appropriate. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Bailey Farms, Inc. v. NOR-AM Chem.Co.*, 27 F.3d 188, 191 (6th Cir. 1994). If the state supreme court has not yet addressed the issue presented, we must predict how it would rule, by looking to "all available data," including state

*VonFeldt*, 1999 WL 413393, at *3. Therefore, where a corporation has extended indemnification to the maximum permissible extent, as Owens Corning has done, such a presumption may be applied. This accords with learned commentary on Delaware law, which describes the powers of the corporation to include provision of "accelerated procedures for the 'determination' required by Section 145(d) . . . [or] procedures under which a favorable determination will be deemed to have been made under circumstances where the board fails or refused to act[.]" 1 R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, DELAWARE LAW OF CORPORATIONS AND BUSINESS ORGANIZATIONS, § 4.16; *Waltuch*, 88 F.3d at 95 n.10 (citing this treatise section). Thus, the specific provisions of § 145(d) are not mandatory in these circumstances with regard to indemnification under §§ 145(a),(b). Our reading of these rules is that good faith may be presumed under the expansive by-laws of Owens Corning, even if the relevant determination is not specifically made. National Union could still challenge, under Delaware law, whether Owens Corning's directors were in fact acting in good faith back in 1989 and thereafter, when the factual predicate of the *Lavalle* action arose. *See supra* n.4. However, National Union does not seem to have offered specific allegations on this issue in its appeal.[7]

It is not precisely clear on what grounds the district court determined that the indemnification here comported with Delaware law. The court's opinion appears to rely primarily on the claim that there was a "success" by the directors, resulting in mandatory indemnification under § 145(c). Although for the reasons discussed we cannot support this interpretation, we may affirm on any grounds supported by the record. *City Management Corp. v. U.S. Chem. Co., Inc.*, 43 F.3d 244, 251 (6th Cir. 1994). We conclude that the

[7]National Union originally seems to have considered applying exclusions based on personal malfeasance by the directors but has not brought them forward in the litigation.

structure settlement terms that shift costs on to their insurer. Moreover, since indemnification arising from such a "success" could presumably be challenged under Delaware law for lack of directorial good faith, equating compromise with success would create considerable tension with the *mandatory* nature of § 145(c) indemnification.[6]

Whatever may be the merits of the Ninth Circuit's view as a general matter, an inspection of the Delaware statute shows that the provisions in sections 145(a) and 145(b) are much more clearly designed for situations where settlements are paid out. Both sections (a) and (b) explicitly mention "settlement," whereas § 145(c) does not, limiting itself to costs and attorney's fees. This provides a strong indication that section (c), unlike (a) and (b), is not intended to be ordinarily applicable to settlements. Therefore, we hold that Owens Corning's indemnification arising from the *Lavalle* settlement could not have proceeded under § 145(c).

However, corporations do have significant flexibility regarding their procedures, as long as they remain consistent with public policy and the controlling corporate law. *See Hibbert v. Hollywood Park, Inc.*, 457 A.2d 339, 344 (Del. 1983); *Waltuch*, 88 F.3d at 92-93. It is not impermissible for a Delaware corporation to accord a director seeking indemnification a rebuttable presumption of good faith. *See*

---

[6]Like the *Waltuch* court, we express no opinion on whether a payment in *any* amount must be considered a failure. A suit does have a "nuisance" value, based on the prospective litigation costs required to effect a dismissal of the action. If a defendant could show that the amount paid in settlement was lower than the prospective attorney's fees and other costs it would have incurred save for the settlement, there is a good argument for a label of "success" despite payment. *See Von Feldt,* 1999 WL 413393 at *4. It would seem needlessly burdensome to create an absolute rule that would compel litigants to seek a Pyrrhic victory in court. No such showing has been attempted by Owens Corning here, however; instead it relies on the insufficient ground that there was not an "adverse judgment or finding of wrongdoing" (Owens Br. at 29) – something which is generally true of any pre-trial settlement.

appellate decisions. *Kingsley Assocs., Inc. v. Moll PlasticCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)

The denial of National Union's motions to amend and file a new counterclaim are considered under abuse of discretion. "Decisions as to when justice requires amendment are left to the sound discretion of the trial judge, and we review those decisions under an abuse of discretion standard." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 982 (6th Cir. 1991).

The parties have not briefed the issue of the standard of review appropriate to the grant of a motion to enter final judgment. However, based on its connection to the trial judge's discretion in docket management, and its relationship to the factual details of the parties' conference, abuse of discretion appears to be the appropriate standard. *Cf. Bank of Lincolnwood v. Federal Leasing, Inc.*, 622 F.2d 944, 948 (7th Cir. 1980) (reviewing for abuse of discretion entry of final judgment pursuant to Fed. R. Civ. P. 54(b)).

### A. Allocation of Settlement Costs

National Union provided insurance against liabilities of the directors, rather than against those of the company generally. It argues that the costs of the *Lavalle* settlement should have been allocated among potentially liable parties. This would cause the exposure of the directors (and thus Owens Corning's claim under the Policy) to represent only a fraction of the total paid out. If the fraction of the $9.975 million allocated to the directors resulted in a figure below the $2.5 million deductible, National Union could, hypothetically, avoid payment altogether.

The parties agree that the initial question is whether or not to apply the "larger settlement" rule, as the district court did. The larger settlement rule allows allocation of the costs of a settlement "only where that settlement is larger because of the activities of uninsured persons who were sued or persons who were not sued but whose actions may have contributed to the suit." *Caterpillar, Inc. v. Great Am. Ins. Co.*, 62 F.3d 955,

960 (7th Cir. 1995). Hence, if the uninsured corporate defendant made the settlement larger than it otherwise would have been with only the insured directors as defendants, allocation of the excess can be made and coverage partially denied. There is some economic rationale behind the larger settlement rule, related to the likely intent of an entity purchasing insurance. The type of corporate liability involved is premised on indirect responsibility for the risky acts of directors, and the combined effect (and reasonable intent) of an indemnification provision and a D & O policy is to shift the risk of directorial acts first to the corporation, but then on to the insurer. *See Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 368 (7th Cir. 1990) (Posner, J.).[2]

In an opinion later withdrawn for other reasons, a district court in our Circuit also chose the larger settlement rule over its rival, the "relative exposure rule." *See Ameriwood Industries Int'l. Corp. v. American Cas. Co. of Reading, Pennsylvania*, No. 92-CV-658, 1994 WL 396089 (W.D. Mich. July 27,1994) (vacated on stipulation of parties). The relative exposure rule allocates a settlement based on comparing the potential exposure of the uninsured and insured defendants had the litigation proceeded. *See Caterpillar*, 62 F.3d at 961 (7th Cir. 1995) (choosing larger settlement rule using applicable Illinois law). Because the relative exposure rule "envisions a somewhat elaborate inquiry into what happened in a settlement and who really paid for what relief[,]" *ibid.*, National Union endorses the rule in its effort to resist summary judgment.

---

[2] In discussing this rule, we do not address any interaction it may have with the Private Securities Litigation Reform Act of 1995 (PSLRA). The PSLRA sharply limited joint and several liability in shareholder actions, possibly altering the rationale behind the rule. *See Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 97-6437/38, 1999 WL 420401 (10th Cir. Jun. 24, 1999) (unpublished); 15 U.S.C. § 78u-4(f). The relevant suit and settlement here, *Lavalle*, operated under the old pre-PSLRA regime.

mandatory under § 145(c) and that the settlement constituted "success on the merits or otherwise." Although we find the indemnification did not violate Delaware law, we reject both of Owens Corning's arguments for that conclusion. First, Owens Corning cannot avoid the good-faith requirement through provision of an alternative basis for indemnification; the ability to provide indemnification is constrained by its corporate form as governed by the law of Delaware. As discussed earlier, the Delaware chancery courts have generally required good faith to be present for permissive indemnification, an interpretation also followed by the well-reasoned opinion of the Second Circuit in *Waltuch*.

With regard to Owens Corning's second argument, it is also extremely dubious that a payout of almost ten million dollars would be deemed "success" by the courts of Delaware. Both of the main cases on the issue, *VonFeldt* and *Waltuch*, have declined to define the term precisely, but a reading of them suggests they would have rejected labeling *Lavalle* as a "success" appropriate for § 145(c). *See Waltuch*, 88 F.3d at 96 & n.12 (stating "[e]scape from . . . detriment, for whatever reason, is determinative" but also "we need not decide whether a defendant's settlement payment automatically renders that defendant 'unsuccessful' under § 145(c)"); *Von Feldt*, 1999 WL 413393 at *4 (not reaching question of whether "room *might* exist" for viewing "*nominal* consideration" as consistent with success) (emphasis added). By contrast, the Ninth Circuit's interpretation of Maryland law in *Safeway* appears willing to extend the meaning of "success" to payment of a substantial monetary settlement, so long as the defendant has not conceded liability. *See* 64 F.3d at 1290 n.24. This definition arguably creates the potential for moral hazard and collusion, because it allows directors to

---

under the By-laws or under Delaware law, and thus cannot be asserted to limit the indemnification rights of the directors. Notably, the By-laws specifically provide that the failure to make a determination shall not create a presumption that the director has not met the requisite standard of conduct required for indemnification.

opposed to may) reimburse directors for their costs. Owens Corning has done this. The requirement of good faith on the part of the directors indemnified under §§ 145(a),(b) however, is statutory, and cannot be waived by attempting to extend indemnification even further. *See VonFeldt v. Stifel Fin. Corp.*, No. 15688, 1999 WL 413393 at * 2 (Del. Ch. June 11, 1999); *Cochran v. Stifel Fin. Corp.*, No. 17350, 2000 WL 286722 at *19 (Del. Ch. Mar. 8, 2000). *See also Waltuch v. Conti Comm. Serv. Inc.*, 88 F.3d 87, 95 (2d Cir. 1996) (discussing why Delaware law requires good faith in such circumstances).

A default method for the determination of good faith by the corporation is described by § 145(d). It is National Union's contention that Owens Corning failed to comply with this, and therefore the indemnification was not "pursuant to law" as the Policy requires. Consequently, National Union claims it owes its policyholder nothing for the *Lavalle* settlement. This argument was attempted by the appellant (and rejected) in the Ninth Circuit. *Safeway Stores, Inc. v. Nat'l Union Fire Ins. Co.*, 64 F.3d 1282, 1290 (9th Cir. 1995) (interpreting Maryland corporation law, however).

Owens Corning claims that its by-laws provide an independent basis for indemnification without reference to good faith,[5] or in the alternative, that its indemnification was

---

[5]National Union, by contrast, has also asserted that Owens Corning violated its own contractual agreements with its directors. (Nat'l Union Reply Br. at 7). This is unpersuasive for two reasons. First, this agreement and the Owens by-laws establish a "Reviewing Party" that can make a *negative* determination that *stops* indemnification that would otherwise occur (indemnification proceeds so long as the Reviewing Party "shall not have determined . . . that Indemnitee would not be permitted to be indemnified under applicable law"). To argue that this imposes a requirement that there "must be . . . a determination by the 'Reviewing Party' that the director should . . . be permitted to be indemnified under Delaware law," (Nat'l Union Reply Br. at 8), is, to put it charitably, an error of elementary logic. Second, the agreement explicitly provides that any rights to indemnification in the agreement are *in addition* to rights

---

Ohio has not spoken to whether it would favor one or the other of these rules, although it will not enforce D & O coverage for settlement costs if the underlying shareholder claims are not premised on the misdeeds of directors acting in their corporate capacity. *See Cincinnati Ins. Co. v. Irwin Co.*, No. C-000107/120, 2000 WL 1867297 at *3 (Ohio Ct. App. Dec. 22, 2000) (finding competent evidence existed that all claims had been for acts committed by directors in their personal capacities). Nor does the Policy state which method of allocation should be used. Instead it suggests that, post-settlement, the insurer and the policy holder will use their best efforts to determine a "fair and proper allocation of the amounts as between the Company and the Insureds," with this latter term referring to the directors and officers.[3] (Policy ¶9). The label "fair" does not uniquely designate one of a number of rival legal principles. Therefore, although settlement allocation between covered and uncovered claims is clearly contemplated by the Policy, *where appropriate*, the nature of the method of allocation is ambiguous.

Under well-settled Ohio law, when "provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *U.S. Fidelity & Guaranty Co. v. Lightning Rod Mut. Ins. Co.*, 687 N.E.2d 717, 719 (Ohio 1997) (citations and internal quotation marks omitted). The Seventh Circuit in *Caterpillar* chose the larger settlement rule in part because "Illinois disfavors *pro rata* allocation absent language in the insurance contract that so requires." 62 F.3d at 962. Allocation is in effect a partial exclusion of the insurer's liability, and thus Illinois's policy resembles in this respect the Ohio principle that "an exclusion from liability must be clear and exact in order to be given

---

[3]This provision of the Policy contemplates consent by the Insurer to the settlement and considerably more collaboration ("best efforts") between the parties than in fact occurred. This distinction is part of National Union's claim that Owens Corning breached its duty of good faith and fair dealing.

effect." *Lightning Rod*, 687 N.E.2d at 719 (citations and internal quotation marks omitted).   In the absence of clearer language in the policy, we interpret Ohio law as favoring the larger settlement rule in this instance, and supporting coverage of the settlement except to the extent that uninsured claims have actually increased the insurer's liability. *See also Stoller v. Fidelity & Guaranty Ins. Underwriters, Inc.*, No. WD-87-64, 1988 WL 81809 at * 5 (Ohio Ct. App. Aug. 5, 1988) (denying allocation of settlement for coverage purposes and noting that where an "insurance company wrongfully disclaims coverage and refuses . . . to participate in settlement . . . such disclaimer is made at its peril").   If the uninsured claims would not impose a marginal cost on the insurer, their presence in the settled suit should not operate to exclude the policyholder from coverage for the insured claims (unless an allocation method that mandates this is spelled out in the Policy).

As the movant for summary judgment, the insured carries the burden of demonstrating that there is no genuine issue of material fact concerning whether allocation is warranted. *See Piper Jaffray Co. v. Nat'l Union Fire Ins. Co.*, 38 F. Supp. 2d 771, 776 (D. Minn. 1999) (interpreting essentially the same contract as in this case).   The district court held that Owens Corning carried its burden by showing that insured defendant directors were sued on all claims; there were no separate claims attributable solely to other corporate employees or to the corporation.   National Union claims that even under the larger settlement rule, some of the settlement can be attributed to the corporation, which gained an advantage in avoiding bad publicity and loss of morale.   Presumably National Union is arguing that this incentive led the corporation to settle for a higher amount, creating circumstances for allocation.   The district court rejected these claims, holding any general corporate motives were not distinct from the motives of the directors, and did not rebut the apparent concurrent liability of the corporate defendant and its directors.

An inspection of the language of the *Lavalle* complaint supports the view that the corporate and director defendants were generally used interchangeably.   *Piper* rejected similar claims of special corporate benefit or corporate vulnerability when faced with the same contract as in this case. 38 F. Supp. 2d at 777-80.   The *Piper* court did accept the existence of one genuine issue of material fact, *id.* at 778, which involved whether uninsured employees might have been acting independently of the directors.   However, this was treated as a rebuttal of the insured's evidence, and no such rebuttal evidence has been offered here to show that the acts of uninsured parties had increased liability.[4]

### B. Propriety of Indemnification

The ability of a Delaware corporation to indemnify its directors for the consequences of their acts is constrained by Delaware's General Corporation Law § 145.   This section defines a basic structure that can be modified, within limits, by the adoption of by-laws. DEL. CODE ANN. tit. 8, § 145(f). The basic structure has two types of indemnification, mandatory and permissive.   Mandatory indemnification for defense expenses occurs when the director is "successful on the merits or otherwise" in defense of the action brought against him. § 145(c).   Permissive indemnification may occur, if the corporation so chooses, for the costs imposed on directors who have been determined to have acted in good faith.   §§ 145(a),(b).   It is common for corporations to adopt through their by-laws a requirement that they must (as

---

[4]National Union also now suggests that the settlement may have resolved allegations of insider trading brought by the *Lavalle* plaintiffs. (Nat'l Union Br. at 57).   These claims were not insured under the Policy. However, although National Union had initially denied coverage on such grounds (among others), it has never attempted to defend on this ground during the long course of the federal litigation.   These allegations arise for the first time on appeal, which effectively waives review apart from plain error.   National Union merely speculates that the settlement *could* have paid for some residual exposure on uninsured claims.   This does not rise to the level of a plain error.