corporation and the insured directors and officers had separate counsel.

In the case before us, the district court was persuaded that there was "nothing to allocate," or, in the language of *Nordstrom*, nothing to "prorate." However, in another sense, the insured, the uninsured, and their separate counsel provided the "basis" for allocation or proration that was lacking in *Nordstrom*. As the district court observed, "Telxon, Meyo and Wipff chose the counsel structure they wished to employ in this case and chose how those counsel would interact." J.A. at 803 (Order at 16). The insured directors and officers were represented by their own very active counsel. Most important here, the quite separate billing statements of the firms provided the insurer with a crystal clear "'means of prorating the costs' between covered and noncovered claims." *Id.* (quoting *Prudential Prop. and Cas. Ins. Co.*, 724 P.2d at 424). So, even if there were something to allocate, and Ohio law mirrored the *Nordstrom* interpretation of the Washington allocation rule, we would reach the same ultimate result – affirmance of the court below.

### IV. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to Federal.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0379P (6th Cir.)
File Name: 02a0379p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TELXON CORPORATION,
    *Plaintiff-Appellant,*

    *v.*

FEDERAL INSURANCE
COMPANY,
    *Defendant-Appellee.*

No. 00-4530

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-01235—Kathleen McDonald O'Malley, District Judge.

Argued: April 30, 2002

Decided and Filed: October 31, 2002

Before: SILER and CLAY, Circuit Judges;
OBERDORFER, District Judge.

_____

*The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

---

**COUNSEL**

---

**ARGUED:**    Drew A. Carson, GOODMAN, WEISS, MILLER, LLP, Cleveland, Ohio, for Appellant. Jonathan A. Constine, HOGAN & HARTSON, Washington, D.C., for Appellee. **ON BRIEF:** Drew A. Carson, GOODMAN, WEISS, MILLER, LLP, Cleveland, Ohio, for Appellant. Jonathan A. Constine, Robert M. Blue, HOGAN & HARTSON, Washington, D.C., for Appellee.

---

**OPINION**

---

OBERDORFER, District Judge. In this insurance coverage action the District Court, exercising diversity jurisdiction, granted to Federal Insurance Company ("Federal") a summary judgment that it was not obligated by an officers and directors liability policy to reimburse Telxon Corporation ("Telxon") for certain costs which it incurred in defending a stockholder class action brought against it and two of its officer/directors covered by that policy. Telxon appealed. We **AFFIRM**.

### I. BACKGROUND

**A.  The D&O Policy**

Telxon, a global designer and manufacturer of wireless and mobile information systems, purchased from Federal an Executive Liability Indemnification Policy, commonly known as a directors and officers policy (hereinafter, the "D&O policy"), covering claims made against its directors and officers during the period of May 1, 1992 to May 1, 1993. The D&O policy contained an "Insuring Clause" entitled "Executive Liability Coverage," which provided that Federal

shall pay on behalf of each of the Insured Persons all Loss for which the Insured Person is not indemnified by

---

*Casualty*, 489 A.2d at 545.[5] We do not construe Ohio law as permitting or mandating more than that on the facts of this case.

Finally, Telxon relies on the Ninth Circuit's decision in *Nordstrom v. Chubb & Co.*, 54 F.3d 1424 (9th Cir. 1995). The policy at issue in that case also limited the insurer's liability to amounts that the insured persons were "legally obligated to pay."[6] That diversity case, however, like this one, turned on state law applied to the particular facts of the case. *Nordstrom* was governed by the law of Washington state, and its facts differ materially from those before us. Telxon could not prevail on the authority of *Nordstrom*. At the legal level, the *Nordstrom* court invoked Washington precedent to conclude that "the insurer is liable for all defense costs if 'there is no reasonable means of prorating the costs' between covered and noncovered claims." *Id.* at 1436 n.5 (quoting *Prudential Prop. and Cas. Ins. Co. v. Lawrence*, 724 P.2d 418, 424 (Wash Ct. App. 1986)). Applying the foregoing statement of Washington law to the facts before it, the *Nordstrom* court found that while the liability of the uninsured corporation was "concurrent" with that of the insured directors and officers, "the attorneys' billing statements provide no basis for allocation [read: proration]." *Id.* In this connection, it is noteworthy that there is no indication in the *Nordstrom* opinion that the uninsured

---

[5] In contrast, the insurer in *Continental Casualty* sought to reimburse the school board for only a part of an amount it was "legally obligated to pay," even though the school board's D&O policy covered "*all* loss which the School District shall become legally obligated to pay." *Continental Casualty*, 489 A.2d at 538 (emphasis added). Application of the reasonably related rule thus preserved the full extent of coverage afforded by the plain language of the school board's policy.

[6] The *Nordstrom* court opined that "[u]nder this provision, the parties would expect that Federal would be responsible for any amount of liability that is attributable in any way to the wrongful acts or omissions of the directors and officers, regardless of whether the corporation could be found concurrently liable on any given claim under an independent theory." *Nordstrom*, 54 F.3d at 1433 (citations omitted).

found that Owens Corning's D&O policy was ambiguous about the method of allocation, and concluded, "In the absence of clearer language in the policy, we interpret Ohio law as favoring the larger settlement rule *in this instance*, and supporting coverage of the settlement except to the extent that uninsured claims have actually increased the insurer's liability." *Id.* (emphasis added).

Similarly, the Ohio Supreme Court has not addressed the reasonably related rule.[4]  As a federal court exercising diversity jurisdiction, "it is our duty to anticipate how that court would rule" if presented with the facts here. *Mahne v. Ford Motor Co.*, 900 F.2d 83, 87 (6th Cir. 1990). We are convinced that the Ohio Supreme Court would not apply the reasonably related rule to this case. As noted, Ohio courts look to the plain language of an insurance contract to ascertain the intent of the parties. Unlike in *Owens Corning*, however, the policy at issue in this case is not ambiguous: It clearly covers only those amounts that its directors and officers are "legally obligated to pay" and excludes from coverage losses that the directors and officers are not "legally obligated to pay." Federal awarded this coverage by reimbursing the fees and costs charged to Meyo and Wipff by Thompson and Howrey, respectively. Thus, Telxon has already received, as the Maryland court in *Continental Casualty* put it, the "full benefit of its bargain." *Continental*

---

[4]An unpublished decision by a panel of this circuit rejected an uninsured corporation's request that the court rely on the reasonably related rule. *See Progressive Architects/ Engineers/Planners, Inc. v. Security Ins. Co. of Hartford*, Nos. 95-1935, 95-1981, 1996 WL 724364, at *3 (6th Cir. Dec. 16, 1996) (stating, in a case involving Michigan law, "*Continental Casualty* is a Maryland decision, and its allocation formula has not been adopted by Michigan courts. We therefore decline to follow it today."). An unpublished opinion by a district court in this circuit, which it later vacated and withdrew, adopted the reasonably related rule in a case where "some" of the individual officers and directors retained separate counsel. *Ameriwood Indus. Int'l Corp. v. American Cas. Co.*, No. 92-CV-658, 1994 WL 396089, *11 (W.D. Mich. July 27, 1994), *withdrawn and vacated*, 864 F. Supp. 34 (W.D. Mich. 1994).

---

the Insured Organization and which the Insured Person becomes legally obligated to pay on account of any claim first made against him, individually or otherwise, during the Policy Period . . . for a Wrongful Act committed, attempted, or allegedly committed or attempted, by the Insured Person(s) before or during the policy period.

Joint Appendix ("J.A.") at 41 (D&O Policy, ¶ 1.1).[1]

The policy defined the "Insured Organization" as Telxon and its subsidiaries, and the "Insured Persons" as "[a]ny person who has been, now is, or shall become a duly elected director, or a duly elected or appointed officer of the Insured Organization." *Id.* at 40 (D&O Policy, Items 6, 7). The policy defined "Loss" as "the total amount which any Insured Person(s) becomes legally obligated to pay on account of each claim and for all claims in each Policy Year made against them for Wrongful Acts for which coverage applies, including, but not limited to, damages, judgments, settlements, costs and Defense Costs." *Id.* at 45 (D&O Policy, ¶ 9.1). The policy defined "Defense Costs" as "that part of Loss consisting of costs, charges and expenses . . . incurred in defending, investigating or monitoring legal actions, claims, or proceedings and appeals therefrom and the cost of appeal, attachment or similar bonds." *Id.* In addition, the policy stated that Federal "shall not be liable for any

---

[1]A second insuring clause, entitled "Executive Indemnification Coverage," provided that Federal

> shall pay on behalf of the Insured Organization all Loss for which the Insured Organization grants indemnification to each Insured Person, as permitted or required by law, which the Insured Person has become legally obligated to pay on account of any claim first made against him, individually or otherwise, during the Policy Period . . . for a Wrongful Act committed, attempted, or allegedly committed or attempted, by the Insured Person(s) before or during the policy period.

J.A. at 41 (D&O Policy, ¶ 1.2). This indemnification provision is not at issue in this case.

settlements or Defense Costs to which it has not consented." *Id.* at 43 (D&O Policy, ¶ 6.1).

Thus, on its face, Telxon's D&O policy provides direct coverage to Telxon's directors and officers for any loss that they are "legally obligated to pay." The policy provides coverage to Telxon only to the extent that Telxon is "permitted or required by law" to indemnify its directors and officers for a covered loss that the directors and officers were "legally obligated to pay."

## B.   The Underlying Action

In December 1992, during the policy period, shareholders filed four class action securities lawsuits in the Northern District of Ohio against Telxon, its former President and incumbent Chief Executive Officer Raymond D. Meyo, and its incumbent President and Chief Operating Officer Daniel R. Wipff. The district court later consolidated the cases and styled them, collectively, as *Stavroff v. Meyo*. The consolidated complaint alleged, *inter alia*, that Telxon, through Meyo and Wipff, misrepresented Telxon's financial performance in order to raise the market price of its common stock. J.A. at 648-53 (Complaint ¶¶ 37-53). On September 14, 1995, the district court in the underlying action granted summary judgment to Telxon, Meyo, and Wipff. *See Stavroff v. Meyo*, 987 F. Supp. 987 (N.D. Ohio 1995), *aff'd*, 129 F.3d 1265 (6th Cir. 1997) (unpublished table decision).

Telxon initially engaged its general counsel, Goodman Weiss Miller ("Goodman") to defend it in the class action, with Skadden, Arps, Meagher & Flom ("Skadden") serving as co-counsel. Goodman and Skadden – in December 1992 and January 1993, respectively – entered appearances on behalf of Telxon and Wipff, but not Meyo. *Id.* at 90, 92. On February 12, 1993, Meyo retained Thompson Hine & Flory ("Thompson"), replacing his initial counsel, Chattman Sutrela Friedlander. *Id.* at 53 (Telxon Corporation Certification dated Oct. 25, 1993). Shortly thereafter, Wipff retained Howrey & Simon ("Howrey"). In March 1993, Howrey entered an

portion attributable to the latter. The Maryland court held that the insurer could not allocate only a portion of the total costs to the insured claims when the costs incurred in defending an uninsured claim were "reasonably related to [the] defense of" an insured one. *Id.* at 545.[3] The Maryland court derived this principle not from any particular legal authority, but from a desire to effectuate what it perceived to be the school board's intent in purchasing its policy, stating, "Having purchased this form of litigation insurance, the Board is entitled to the full benefit of its bargain." *Id.*

In determining whether we should accept Telxon's invitation to adopt and apply the reasonably related rule to this case, we have also given careful consideration to the recent decision of another panel of this circuit in *Owens Corning v. National Union Fire Insurance Company of Pittsburgh, Pa.*, 257 F.3d 484 (6th Cir. 2001), rendered after the parties completed their briefing of this appeal. *Owens Corning* is quite different from the instant case. There, Owens Corning sought coverage pursuant to the larger settlement rule for settlement and defense costs incurred in a lawsuit filed against it and several of its directors and officers. The D&O insurer allocated the costs among the insured parties, which it reimbursed, and the uninsured parties, which it did not. The policy at issue in *Owens Corning* did not limit the insurer's reimbursement responsibility to those payments the insured persons were legally obligated to pay. In addition, there was a settlement of the underlying action against Owens Corning. Telxon, Meyo, and Wipff did not settle; they prevailed on summary judgment.

As here, the *Owens Corning* court looked to Ohio law. That court described allocation as a "partial exclusion of the insurer's liability," which, under Ohio law, must be "'clear and exact in order to be given effect.'" *Id.* at 493 (quoting *Lightning Rod Mut. Ins. Co.*, 687 N.E.2d at 719). The court

---

[3]This state law issue was before the Maryland court on a certificate from a federal district court that had diversity jurisdiction over the coverage action.

Finally, Telxon suggests that Meyo and Wipff had an implied obligation to indemnify it. There is no factual or legal basis for this contention. "Indemnification occurs when one who is primarily liable is required to reimburse another who has discharged a liability for which that other is only secondarily liable." *Krasny-Kaplan Corp. v. Flo-Tork, Inc.*, 609 N.E.2d 152, 154 (Ohio 1993). When there is no primary liability, "the traditional understanding of indemnity cannot apply." *Id.* It is a matter of hornbook law that the concept of indemnity is not implicated here.

In sum, we conclude from the undisputed evidence that Thompson and Howrey actively represented Meyo and Wipff, respectively, throughout the underlying litigation. Goodman and Skadden consistently disavowed any representation of Wipff and in fact never purported to represent Meyo. Therefore, there is no basis for finding that Meyo or Wipff had a legal obligation to pay Goodman or Skadden. In the absence of such an obligation, Telxon's D&O policy unambiguously forecloses the coverage it seeks.

In reaching this conclusion, we have carefully considered Telxon's claim that it is entitled to full reimbursement on the authority of the "reasonably related rule," which it asks us to adopt. This rule was first articulated by the Maryland Court of Appeals in *Continental Casualty Co. v. Board of Education of Charles County*, 489 A.2d 536 (Md. 1985). There, a school board's D&O policy covered "all loss which the School District shall become *legally obligated to pay*" as a result of any wrongful acts by its employees. *Id.* at 538 (emphasis added). The school board sought coverage under this policy after settling a lawsuit against it and several of its officials that sounded in tort – covered by the D&O policy – and contract – which was not. *See id.* at 539.[2] The insurer proposed to apportion the total loss between the uninsured contract claims and insured tort claims and pay only the

---

[2]It appears that the school board retained the same counsel to represent both itself and the officials. *See Continental Casualty*, 489 A.2d at 541.

appearance on behalf of Wipff "in place and stead of Goodman." *Id.* at 158.

On February 16, 1993, Federal sent Goodman a reservation of rights letter setting forth its coverage analysis with respect to the underlying litigation. The letter stated in relevant part, "Defense Costs coverage is afforded . . . to defendants Raymond Meyo and Daniel Wipff . . . *solely* in their capacity as Directors and/or Officers of Telxon Corporation. Telxon Corporation is Insured under the policy *solely* for its liability to indemnify any or all of the Insured Persons for Loss (including Defense Costs) sustained in the litigation." *Id.* at 763 (letter from Donna Kurzawski to Steven Miller dated Feb. 16, 1993) (emphasis in original).

By letter dated April 20, 1994, Federal, at Telxon's request, described to Telxon's insurance agent its "proposal for the allocation of attorney fees incurred" in the underlying action. *Id.* at 772 (letter from Donna Kurzawski to Anthony Gruppo dated Apr. 20, 1994). Federal stated that it would reimburse 100% of the fees charged by Thompson and Howrey on behalf of Meyo and Wipff, respectively. *Id.* The proposal further stated, however, that it would cover none of Skadden's fees, and only 66% of the fees charged by Goodman between December 1992 to May 1993. *Id.* It explained, "It is our position that Meyo & Wipff retained separate counsel early in the litigation and that Federal should not reimburse any fees incurred [by Goodman] after the retention of separate counsel by Meyo & Wipff." *Id.* Federal undertook partial reimbursement of fees charged by Goodman because "some work was expended" by Goodman on behalf of Meyo and Wipff "in the drafting and filing" of a motion to dismiss the underlying action, which the district court ruled on in early June of 1993. *Id.* at 773.

Ultimately, Federal reimbursed Telxon for a total of $1,821,795 in defense costs incurred in the underlying litigation. *Id.* at 38 (Declaration of Margaret Klimczyk dated Apr. 28, 1999). Of that amount, $138,374 represented fees charged by Goodman prior to Wipff's retention of Howrey

and reasonable follow-up during the ensuing transition. *Id.* In response to a show cause order in the coverage action, Federal later paid an additional $77,019 attributable to fees charged by Goodman prior to May 1993, though without conceding that it was obligated to do so. The remainder of the $1,821,795 represented fees and costs charged by Thompson and Howrey for services they rendered to Meyo and Wipff. *Id.*

## C. Coverage Action

On May 28, 1998, Telxon filed this lawsuit, seeking a declaration that all of the fees charged by Goodman and Skadden were covered by the D&O policy. Telxon and Federal filed cross-motions for summary judgment. In its motion, as on this appeal, Telxon invoked the "reasonably related rule" as authority for its entitlement to reimbursement of these fees. The Maryland Court of Appeals had pioneered the concept that defense costs not expressly covered by a D&O policy may nonetheless be reimbursed if they are "reasonably related" to the defense of a claim that is covered by the policy. *Continental Casualty Co. v. Board of Educ. of Charles County*, 489 A.2d 536, 545 (Md. 1985). Telxon also cited the "larger settlement rule," a variation of the reasonably related rule, which "allows allocation of the costs of a settlement 'only where that settlement is larger because of the activities of uninsured persons who were sued or persons who were not sued but whose actions may have contributed to the suit.'" *Owens Corning v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 257 F.3d 484, 491 (6th Cir. 2001) (quoting *Caterpillar, Inc. v. Great Am. Ins. Co.*, 62 F.3d 955, 960 (7th Cir. 1995)).

The district court below concluded that the reasonably related rule was "simply inapplicable" to the facts of this case. J.A. at 802 (Order at 15). The court observed that such allocation rules are "designed to solve allocation disputes; that is, when a corporation and its officers and directors share legal representation and it is, therefore, difficult to determine who is responsible for the costs of the representation." *Id.*

or Wipff, just as Goodman's pleadings stated that they were filed only on behalf of Telxon. Lawyers from Howrey participated in each of the twenty-six depositions taken in the case, and lawyers from Thompson participated in all but one of those depositions. *Id.* at 75 (Engle Decl. ¶ 11). Thompson and Howrey argued separately at the summary judgment hearing in the underlying litigation on behalf of their respective clients. *Id.* at 148-56. The transcript of the summary judgment hearing states that Goodman and Skadden appeared only on behalf of Telxon, while Thompson and Howrey appeared only on behalf of Meyo and Wipff, respectively. *Id.* at 148-49. That hearing took place sixteen months after Federal stated, in its reservation of rights letter, that it would not reimburse any fees charged by Goodman after the retention of separate counsel by Meyo and Wipff. For these services, Meyo and Wipff were legally obligated to pay a combined total of $1.6 million, which Federal paid pursuant to the plain policy language.

Telxon argues that Goodman assumed the role of "lead counsel" in the underlying action and thus provided direct representation to all of the defendants. After Meyo and Wipff retained separate counsel, Telxon "insisted" that Goodman "take the lead in defending" the underlying action. J.A. at 745 (letter from Robert Goodman to Anthony Gruppo dated May 12, 1994). The mere fact that Goodman performed the role of "lead counsel" does not obligate Meyo and Wipff to pay it. We judicially notice that in multi-party litigation, one counsel on each side is frequently "first chair." Telxon cites no case, and we can discover none, supporting the proposition that "lead counsel" is entitled to bill the clients of his co-counsel, absent some sort of special agreement. In any event, to give substance to the title of "lead counsel," we look to the record in this case. That record, as described above, does not convince us, nor would it convince a reasonable trier of fact, that the Goodman firm provided representation to Meyo and Wipff that legally obligated them to pay that firm a fee in addition to the $1.6 million charged by and paid to their own counsel.

Howrey. In their filings in the district court in the underlying action, Goodman and Skadden stated that they represented only Telxon. Neither Goodman nor Skadden ever entered an appearance on behalf of Meyo. Both firms originally entered appearances on behalf of Telxon and Wipff. Soon thereafter, however, Wipff retained Howrey, who appeared on his behalf "in place and stead of" Goodman. Goodman's pleadings filed in the underlying action identify Goodman and Skadden only as "Attorneys for Defendant Telxon Corporation." *See, e.g.*, J.A. at 228-36 (excerpts from pleadings filed in the underlying action).

Goodman and Telxon made similar statements out of court. For example, a Telxon official signed a "Certification" stating that Thompson represented Meyo, Howrey represented Wipff, and Goodman and Skadden represented Telxon. *Id.* at 53 (Telxon Corporation Certification dated Oct. 25, 1993). Goodman wrote to counsel for the plaintiffs in the underlying action that "[a]s counsel for Telxon" it had no objection regarding a particular discovery matter, "but I am not speaking on behalf of counsel for the other defendants, whom you may contact directly." *Id.* at 86 (letter from Steven Miller to Richard Wayne dated July 20, 1994). In separate letters to Federal, Goodman described Thompson as "Mr. Meyo's counsel" and Howrey as Wipff's "separate counsel." *Id.* at 62, 63. There is no evidence that Telxon or Goodman exercised any oversight over Thompson or Howrey.

Thompson and Howrey were not mere "shadow counsel." *Compare Raychem Corp. v. Federal Ins. Co.*, 853 F. Supp. 1170, 1174 (N.D. Cal. 1994) (noting that "several" of the directors and officers involved in a shareholder class action retained "shadow counsel" to monitor the litigation on their behalf). It is undisputed that Thompson and Howrey actively participated in the litigation on behalf of Meyo and Wipff, respectively. Howrey filed twenty-eight motions, discovery requests, or other papers with the district court in the underlying litigation, and Thompson filed thirteen such pleadings. *Id.* at 75 (Michele Engle Decl. ¶ 10). These pleadings stated that they were filed only on behalf of Meyo

The court then stated the corollary principle that such rules "cannot apply when no need exists to determine who is responsible for the costs of the joint legal representation." *Id.* The district court further found that in this case, "there is nothing to allocate" because each of the three defendants in the underlying action had retained separate, and not joint, legal representation. *Id.* The court stated "that no reasonable jury could find" that Goodman and Skadden "actually represented Meyo and Wipff as additional counsel or that Federal consented to such representation." *Id.* 798 (Order at 11). As the court put it, "Telxon, Meyo and Wipff chose the counsel structure they wished to employ in this case and chose how those counsel would interact. Whatever the basis for that choice, it resulted in each defendant acting through *separate* counsel." *Id.* at 803 (Order at 16) (emphasis in original). The court continued, "The fact that co-defendants took the not-so-unusual step of dividing up the responsibilities of their respective counsel does not transform this action into one to which allocation principles should be applied." *Id.* at 803-04 (Order at 16-17).

Ultimately the district court focused on the provision of the D&O policy limiting Federal's liability to fees the insured directors and officers were "legally obligated to pay." *Id.* at 807 (Order at 20). The court ruled that this phrase was unambiguous because it was not susceptible to more than one interpretation. Said the district court, "'Legally obligated to pay' means simply what it says, that the insurance policy only covers defense costs that the insured person has a legal obligation to pay, not a *desire* to pay or even a moral obligation to pay." *Id.* at 808 (Order at 21) (emphasis in original). The court found that "there is no evidence that Meyo and Wipff undertook any legal obligation to pay Goodman Weiss's and Skadden's fees after those officers retained separate counsel." *Id.* After noting that the larger settlement rule was also inapplicable since the underlying action was not settled, the district court concluded that all of the fees and expenses charged by Goodman and Skadden were Telxon's sole responsibility. Accordingly, the district

court granted Federal's motion for summary judgment and denied Telxon's motion for the same. This appeal followed.

## II. STANDARD OF REVIEW

We review *de novo* a district court's grant of summary judgment. *See White Consol. Indus., Inc. v. Westinghouse Elec. Corp.*, 179 F.3d 403, 407 (6th Cir. 1999) (citing *EEOC v. Prevo's Family Market*, 135 F.3d 1089, 1093 (6th Cir. 1998)). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

The issue in this appeal is whether Telxon can recover the defense fees and costs charged by Goodman and Skadden under its D&O policy. Telxon asserts that its alleged liability in the underlying action was wholly derivative of, and concurrent with, that of Meyo and Wipff. Telxon argues that affording it the coverage it seeks will give full effect to the D&O policy's underlying purpose of protecting an uninsured corporation against liability arising from the wrongful acts of its directors and officers.

Our jurisdiction to address Telxon's arguments is based solely on the diversity of the citizenship of the parties; the insurance coverage issue Telxon raises is a matter of state law. *See Transamerica Ins. Co. v. Duro Bag Mfg. Co.*, 50 F.3d 370, 372 (6th Cir. 1995) ("Interpretation of insurance contracts is, of course, a matter of state law . . . ."); *Omaha Prop. and Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991) ("The states regulate insurance companies for the protection of their residents . . . ."). We apply the relevant

state law in accordance with the controlling decisions of the highest court of that state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Owens Corning v. National Union Fire Insurance Company of Pittsburgh, Pa.*, 257 F.3d 484 (6th Cir. 2001) (citing *Erie* and applying Ohio law to resolve an insurance coverage question).

Applying this analytical framework, we conclude that Telxon is not entitled to the coverage it seeks under its D&O policy. It is well-established in Ohio, and indeed universally, that contracts, including insurance policies, "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 313 N.E.2d 374, 376 (Ohio 1974) (citations omitted). The words of the insurance policy should be given their "'ordinary and commonly understood meaning.'" *King v. Nationwide Ins. Co.*, 519 N.E.2d 1380, 1383 (Ohio 1988) (quoting *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 164 N.E.2d 745, 747 (Ohio 1960)).

Telxon's D&O policy unambiguously covered *only* losses that the "Insured Person(s)" – here, Meyo and Wipff – were "legally obligated to pay." The "ordinary and commonly understood meaning" of this provision is that Telxon's D&O policy necessarily excludes from coverage any amount that Meyo and Wipff were *not* "legally obligated to pay."

We conclude that Meyo and Wipff were never "legally obligated to pay" Goodman and Skadden. There was no express contract between Meyo or Wipff on one hand, and Goodman or Skadden on the other. Nor were the ingredients of an implied contract present. In Ohio, when a client seeks and obtains an attorney's advice on a legal matter, an implied contract to pay a reasonable value for the professional services rendered may arise, unless there is a special agreement to the contrary. *See Warm v. Greenberg*, 279 N.E.2d 640, 641-42 (Ohio Ct. App. 1971).

Here, it is undisputed that Meyo and Wipff engaged their own counsel and never sought advice or services directly from Goodman and Skadden, as distinguished from Thompson and